IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH KOWALSKI, | No. C-06-3341 MMC |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: EXHAUSTION OF ADMINISTRATIVE REMEDIES** |
| v. | |
| FARELLA, BRAUN & MARTEL, LLP, et al., | |
| Defendants. | (Docket No. 15) |

Before the Court is defendants' motion for partial summary judgment on the issue of exhaustion of administrative remedies. Plaintiff has filed opposition to the motion; defendants have filed a reply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, and rules as follows.

**BACKGROUND**

On February 15, 2006, plaintiff filed an internal appeal of defendants' termination of her ERISA long-term disability benefits; her appeal was stamped "received" by the claims administrator as of February 17, 2006. (See Stamey Decl. Ex. 2 (Administrative Record ("AR")) at 1404.) In a letter to plaintiff's counsel, dated March 7, 2006, the claims administrator requested copies of plaintiff's 2004 and 2005 tax returns, and noted that federal regulations required defendant to make a decision on plaintiff's appeal "by April 02,

1  2006, unless there are special circumstances." (See AR at 1681.)  The letter further stated:
2  "If we do not receive the requested information in time to make our decision by April 02,
3  2006, federal regulations allow us to extend the time for completing our review by an
4  additional 45 days." (See id.)  The claims administrator's notes of a telephone call he made
5  to plaintiff's counsel on March 7, 2006 state they discussed whether there would be an
6  additional independent medical examination ("IME"), and that the claims administrator told
7  counsel that he did not know, but that if "it was recommended by the medical review,' there
8  would be another IME. (See id. at 1683.)

9  In a letter to plaintiff's counsel, dated March 31, 2006, the claims administrator
10 apprised counsel that defendants needed an extension of "up to 45 days to make a
11 decision on [plaintiff's] claim appeal," because defendants had not yet received from
12 plaintiff the "financial information previously requested." (See id. at 1715.)  The claims
13 administrator further stated that defendants were "proceeding with [their] medical review,"
14 and informed plaintiff that plaintiff had the right to request an IME "should opinions differ on
15 the degree of medical impairment." (See id.)  On the same date, plaintiff's counsel faxed
16 copies of plaintiff's tax returns to the claims administrator. (See id. at 1720.)

17 At some point, the claims administrator retained a neurologist, Alan Neuren, M.D.,
18 ("Dr. Neuren"), who reviewed the medical record and contacted plaintiff's physicians for
19 clarification of their reports. (See, e.g., id. at 1748.)  In a written report dated April 20,
20 2006, Dr. Neuren stated his disagreement with the conclusions of plaintiff's physicians that
21 plaintiff was disabled, and opined that plaintiff should have been referred for
22 electrodiagnostic testing to determine whether plaintiff was suffering from nerve damage.
23 (See id. at 1764-78.)

24 In a letter to plaintiff's counsel, dated May 17, 2006, the day before the above-
25 referenced 45-day extension expired and nearly a month after the date of Dr. Neuren's
26 report, the claims administrator stated: "As a result of our medical evaluation, we have
27 determined that it is necessary for your client to be examined by an independent physician
28 of our choice." (See id. at 1815.)  The claims administrator further stated therein: "The

2

extension time period will stop while we wait for the results of this examination and will begin again after we receive the examination report." (See id.)

In a letter from plaintiff's counsel to the claims administrator, dated May 19, 2006, counsel objected that the policy did not provide for an additional IME, that it was unreasonable to subject plaintiff to another IME, and that defendants' request to do so was untimely under the applicable federal regulations. (See id. at 1821-22.) In a letter dated June 7, 2006, the claims administrator responded that twenty months had passed since the previous IME, that plaintiff had submitted new medical evidence in connection with her appeal, and that an additional IME was "reasonably required." (See id. at 1834-35.) Thereafter, in a letter dated June 8, 2006, the claims administrator notified plaintiff's counsel that an IME had been scheduled for June 22, 2006. (See id. at 1870.)

Meanwhile, on May 22, 2006, plaintiff filed the instant action. On June 15, 2006, the claims administrator received notice of the lawsuit, (see id. at 1878), and canceled the IME, (see id. at 1887). Apparently, plaintiff was not notified of the cancellation; in a letter from plaintiff's counsel to the claims administrator, dated June 20, 2006, plaintiff's counsel stated that plaintiff would "attend the IME as scheduled, but under protest." (See id. at 1905.) Counsel further stated: "There is no legal authority for your demanded post-appeal IME, nor for your contention the appeal period is tolled, and we will not agree to it." (See id. at 1906.) Thereafter, in a letter dated June 22, 2006, counsel stated that plaintiff had appeared for her IME appointment, as scheduled, but was told that the IME had been cancelled the previous week; counsel complained that neither plaintiff nor her counsel had been advised of the cancellation. (See id. at 1901.)[1]

The record does not indicate defendants have ever issued a decision on plaintiff's appeal.

Defendants now move for summary judgment on the sole ground that plaintiff failed

---

[1] Although defendants state in their motion that "a further request was made, but [plaintiff's counsel] refused to allow the IME to go forward," defendants have submitted no evidence that they attempted to reschedule the IME at any time after June 22, 2006.

3

to exhaust her administrative remedies before filing suit.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c).  Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." See id.  The Court may not weigh the evidence. See id. at 255.  Rather, the nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court there is an absence of evidence to support the nonmoving party's case. See id. at 325.  Where the moving party "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial." See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding when plaintiff moves for summary judgment on an issue upon which he bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor.") (emphasis in original).

1    A party opposing a properly supported motion for summary judgment "may not rest
2 upon the mere allegations or denials of [that] party's pleading, but . . . must set forth
3 specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see
4 also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show the issue will be
5 resolved conclusively in its favor.  See Liberty Lobby, 477 U.S. at 248-49.  All that is
6 necessary is submission of sufficient evidence to create a material factual dispute, thereby
7 requiring a jury or judge to resolve the parties' differing versions at trial.  See id.

**DISCUSSION**

9    Before bringing an ERISA claim for disability benefits, a claimant must exhaust his
10 administrative remedies.  See Sarraf v. Standard Ins. Co., 102 F.3d 991, 993 (9th Cir.
11 1996); see also Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir. 1980) (explaining policy
12 reasons for exhaustion requirement).
13    Here, defendants argue, plaintiff failed to exhaust her administrative remedies, in
14 that she filed the instant lawsuit before defendants issued a decision on her appeal.
15 Plaintiff responds, inter alia, that the time for defendants to issue such decision had
16 elapsed before she filed suit, and that, consequently, plaintiff had exhausted her
17 administrative remedies and was entitled to file the instant action.
18    Where a disability benefits claimant seeks review of an adverse benefit
19 determination, the applicable federal regulations require the plan administrator to notify the
20 claimant of the plan's decision "within a reasonable period of time, but not later than [45
21 days] after receipt of the claimant's request for review by the plan, unless the plan
22 administrator determines that special circumstances . . . require an extension of time for
23 processing the claim."  See 29 C.F.R. §§ 2560.503-1(i)(1)(i) and (i)(3)(i).  "If the plan
24 administrator determines that an extension of time for processing is required, written notice
25 of the extension shall be furnished to the claimant prior to the termination of the initial [45-
26 day] period," and such notice "shall indicate the special circumstances requiring an
27 extension of time and the date by which the plan expects to render the determination on
28 review."  See 29 C.F.R. § 2560.503-1(i)(1)(i).  "In no event shall such extension exceed a

5

1  period of [45 days] from the end of the initial period." See 29 C.F.R. §§ 2560.503-1(i)(1)(i)
2  and (i)(3)(i).
3        Here, the evidence is undisputed that defendants received plaintiff's appeal on
4  February 17, 2006, and notified plaintiff of the need for a 45-day extension on March 31,
5  2006, before termination of the initial 45-day period.  Consequently, the extended 90-day
6  period (the 45-day initial period plus the 45-day extension) expired on May 18, 2006, four
7  days before plaintiff filed suit.
8        Contrary to the statement of the claims administrator in his May 17, 2006 letter, the
9  asserted need for an IME provides no basis for tolling the 45-day extension period.
10 Although § 2560.503-1 provides for tolling of the extension period under certain
11 circumstances, such circumstances are not present here.  In particular, § 2560.503-1
12 provides that where the extension period is needed because of "a claimant's failure to
13 submit information necessary to decide a claim, the period for making the benefit
14 determination on review shall be tolled from the date on which the notification of the
15 extension is sent to the claimant until the date on which the claimant responds to the
16 request for additional information." See 29 C.F.R. § 2560.503-1(i)(4).  Here, however, the
17 March 31, 2006 letter notifying plaintiff of the need for an extension stated the extension
18 was needed only because plaintiff had not submitted her tax forms, not because
19 defendants wished to conduct an IME, (see AR at 1715), and plaintiff faxed her tax forms to
20 the claims administrator that same date.  Accordingly, there is no basis for tolling the
21 extension period pursuant to § 2560.503-1(i)(4).  With the sole exception of the tolling
22 provided in § 2560.503-1(i)(4), the regulations, as noted, preclude an extension in excess
23 of 45 days. See 29 C.F.R. §§ 2560.503-1(i)(1)(i) and (i)(3)(i).
24       The regulations further provide that where a plan fails to "follow claims procedures
25 consistent with [§ 2650.503-1], a claimant shall be deemed to have exhausted the
26 administrative remedies available under the plan[.]" See 29 C.F.R. § 2560.503-1(l).
27 Accordingly, because defendants failed to issue a decision within 90 days of receipt of
28 plaintiff's appeal, plaintiff is deemed to have exhausted her administrative remedies. See

id.; see also, e.g., White v. Sun Life Assurance Co. of Canada, 2007 WL 1218209 at *18 (4th Cir. Apr. 26, 2007) (citing § 2560.503-1(l) ("If the plan fails to make a decision with these deadlines, administrative remedies will be considered to be exhausted, and a claimant is entitled to file suit."); Linder v. BYK-Chemie USA Inc., 313 F. Supp. 2d 88 (D. Conn. 2004) (holding plaintiff exhausted administrative remedies where plan did not address benefits claim within regulatory deadline); Fleming v. Kemper National Services, Inc., 2004 U.S. Dist. LEXIS 28378 at *11-14 (N.D. Cal. March 2, 2004) (holding plaintiff had adequately alleged exhaustion of administrative remedies where plaintiff alleged plan failed to address appeal within regulatory deadline); Sidou v. Unumprovident Corp., 245 F. Supp. 2d 207, 216 (D. Maine 2003) (emphasis in original) ("[I]t is simply unreasonable to request that a claimant submit to medical examinations after the applicable deadline for ruling on her appeal") (emphasis in original); cf. Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978 (9th Cir. 2005) (holding prior version of § 2560.503-1, which provided claim was "deemed denied" if decision was not made within regulatory time limits, gave "claimants the ability to access the courts" if plan failed to issue decision within time limits set forth in regulation).[2]

## CONCLUSION

Accordingly, for the reasons set forth above, defendants' motion for summary judgment on the issue of exhaustion of administrative remedies is hereby DENIED.

This order terminates Docket No. 15.

**IT IS SO ORDERED.**

Dated: May 7, 2007

MAXINE M. CHESNEY
United States District Judge

---

[2] Although both plaintiff and defendants devote considerable time to a discussion of the propriety of defendants' request for an IME, the Court need not resolve such dispute for purposes of the instant motion. Even assuming defendants were entitled to require an IME of plaintiff for purposes of determining the merits of plaintiff's appeal, defendants failed to seek an IME in a timely manner. As discussed, defendants were not entitled to tolling based on the request for an IME, and thus had a maximum period of 45 additional days (based on the extension they secured for purposes of reviewing financial information) in which to seek, obtain, and evaluate an IME.